420 A.2d 714

**COMMONWEALTH of Pennsylvania**

v.

**Preston BRIGHT, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 6, 1979.

Filed June 13, 1980.

Petition for Allowance of Appeal Denied Oct. 7, 1980.

2

John W. Packel, Chief, Appeals, Assistant Public Defender, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WICKERSHAM, BROSKY and EAGEN, JJ.*

PER CURIAM:

Appellant, Preston Bright, was convicted by a jury of resisting arrest, and simple and aggravated assault. Post–verdict motions were denied, and Bright was sentenced to eleven and one–half to twenty–three months in the Philadelphia County Prison. This appeal followed.

Bright alleges the trial court improperly:

(1) restricted the scope of his cross–examination of a police witness;

(2) denied his challenge for cause to a prospective juror who was acquainted with the assistant district attorney; and,

(3) refused to ask in voir dire six questions proposed by the defense.[1]

As to assignment of error No. 1, Bright claims a denial of his Sixth Amendment right to confrontation since he was refused an opportunity to cross–examine Officer Kennedy, the arresting officer, about his knowledge of possible disciplinary action to a police officer for use of unnecessary force in making an arrest. By this testimony, he sought to show the officer was aware disciplinary action could possibly be taken against him for the use of unnecessary force and to, thereby, establish a motive on the part of the officer to fabricate his testimony against Bright.[2] The

* Chief Justice MICHAEL J. EAGEN of the Supreme Court of Pennsylvania is sitting by designation.

1. The trial judge conducted voir dire.

2. No evidence was introduced to show unnecessary force was used in making the arrest.

Commonwealth, on the other hand, argues this was a collateral matter.

Possible disciplinary action which may be taken against a police officer for using excessive force in making an arrest is a general consideration or motive with respect to all police officers who make arrests. Here, Bright wanted to discredit a particular police officer's testimony by showing that he had the same general motive applicable to any officer who makes an arrest. Without an evidentiary basis showing unnecessary force and/or disciplinary proceedings, such a general consideration or motive is remote and collateral.

Bright relies on *Commonwealth v. Dawson*, 486 Pa. 321, 405 A.2d 1230 (1979), and *Commonwealth v. Sullivan*, 485 Pa. 392, 402 A.2d 1019 (1979), which are readily distinguishable.

In *Commonwealth v. Dawson*, supra, the possibility of a motive to fabricate had an evidentiary basis since the officer testifying had been transferred, and it could have been shown that the transfer was related to the matter at trial. The same is true of *Commonwealth v. Sullivan*, supra, because the testifying police officer in that case was suspended as a result of the arrest in question and the suspension period was dependent on the outcome of the case. Hence, in each of those cases, the possibility of a motive to fabricate was based on evidence from which a specific motive could have been inferred.

As our Supreme Court has said: "a witness may not be contradicted on 'collateral' matters," *McGoldrick v. Pa. Railroad Co.*, 430 Pa. 597, 600, 241 A.2d 90, 92 (1968), and a collateral matter is one which has "no relationship to the case at trial." *Commonwealth v. Petrillo*, 341 Pa. 209, 223, 19 A.2d 288, 295 (1941); 3 Wigmore Evidence, § 1003 (3d Edition 1940). Instantly, Officer Kennedy's knowledge of the consequences for using excessive force in making an arrest had no relationship to the case at trial. Under such circumstances, the trial court did not abuse its discretion in refusing the cross–examination. As we have said many times, the scope of cross–examination is largely within the sound discretion of the trial court. See *Commonwealth v. Donnelly*, 233 Pa.Super. 396, 417, 336 A.2d 632 (1975).

Next, Bright argues, since one of the prospective jurors, Nancy Serpico, lived in the same neighborhood as the assistant district attorney and had known him since he was a boy, the trial judge abused his discretion in denying defense counsel's challenge for cause.[3] Bright's position is that this knowledge and proximity of residence are factors which made this prospective juror per se disqualified. He cites the case of *Commonwealth v. Colon*, 223 Pa.Super. 202, 205–206, 299 A.2d 326 (1972), in which we observed there were two types of situations where a challenge for cause should be sustained.

The first situation is where the prospective juror on voir dire demonstrates by his answers that there is a likelihood he will not be able to be impartial. Here, Serpico's answers during voir dire clearly indicate the ability to be impartial. Indeed, Bright concedes this is not the basis of his complaint.

The second situation is where, irrespective of the answers given on voir dire, the court must presume the likelihood of prejudice because the potential juror has such a close relationship, be it familial, financial, or situational, with parties, counsel, victims, or witnesses. Bright urges this is such a case. We do not agree.

The record instantly merely shows Serpico knew the prosecutor and "liked him." It does not show she was related to the prosecutor by any friendship, financial, or familial connection. Quite simply, the record does not establish a relationship warranting discharge for cause.

The cases relied on by Bright are distinguishable in that the relationships there involved were clearly different. *Commonwealth v. Stewart*, 449 Pa. 50, 295 A.2d 303 (1972), involved the grant of a new trial because the father of the victim was on and associated with the panel from which the jurors were selected. *United States v. Cavell*, 287 F.2d 792 (3d Cir. 1961), involved a juror who was the son–in–law of a

**3.** Bright claims that this refusal forced the use of a peremptory challenge and that, consequently, he exhausted his allotment before the selection of the twelfth juror.

prosecution witness. *Government of Virgin Islands v. Bodle*, 427 F.2d 532 (3d Cir. 1970), involved a juror in a trial for forceable rape whose sister had been forceably raped and murdered several years earlier. In each instance, the relationship was shown to be of a nature different than that which the record here establishes.

■ Here, the juror merely knew the prosecuting attorney, and, as we indicated in *Commonwealth v. Fletcher*, 245 Pa.Super. 88, 369 A.2d 307 (1976), this, in itself, does not warrant disqualification. In any event, it is well-settled that granting or denying a challenge for cause is within the sound discretion of the trial court. See *Commonwealth v. Sparrow*, 471 Pa. 490, 370 A.2d 712 (1977). Under the circumstances presented, we cannot say the court abused its discretion.

■ Finally, Bright claims the trial court erred when it refused to ask during voir dire six questions proposed by the defense. The first proposed question was:

"If you were chosen as a juror, and at the conclusion of the case, after discussion and deliberation with your fellow jurors you felt differently than they about what the verdict should be, would you be able to hold your view if you thought you were right or would you simply give in to the majority?"

Similar questioning was refused in *Commonwealth v. Perea*, 252 Pa.Super. 272, 275–276, 381 A.2d 494 (1977), and we held that the question was in the nature of a jury instruction and that, since the court gave proper instructions, no error occurred from the refusal to allow the question. An examination of the court's opening remarks and closing instructions instantly clearly demonstrate the trial court adequately and correctly instructed the jury.

■ The second question proposed was:

"If you and fellow jurors, after hearing all the testimony, the arguments of counsel, and the Court instructions, and after full deliberation unanimously reached a verdict, would you be able to stand up in the jury box in open court and announce what the verdict was?"

Assuming arguendo that this question was improperly rejected, that error is harmless since the jurors were individually polled as to the verdict.

■ Questions three and four sought to determine if any prospective juror would be unable to serve because of moral, ethical, or religious reasons, physical disability, or other reasons. An examination of the record shows the subject matter area of these questions was fully covered by the court.

■ Finally, questions five and six dealt with the presumption of innocence and the burden of proof. These questions sought to inquire into each prospective juror's understanding and opinion of specific principles of law and their ability to accept and act upon specific principles of law. In *Commonwealth v. Calhoun*, 238 Pa. 474, 86 A. 472 (1913), our Supreme Court made it clear that questions regarding the understanding of specific principles of law were improper. Further, in *Commonwealth v. Everett*, 262 Pa.Super. 61, 396 A.2d 645 (1978), we reiterated that a question seeking a prospective juror's opinion about a principle of law was not permissible voir dire. Moreover, the court did inquire about the prospective jurors' ability to accept and follow the law as given by the court.

Judgment of sentence affirmed.