J-A18007-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
v.   :
  :
  :
  :
TRUTH SHYDEE WILSON   :
  :
Appellant   :   No. 918 WDA 2019

Appeal from the Judgment of Sentence Entered May 22, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0004689-2018

BEFORE:  BENDER, P.J.E., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY BENDER, P.J.E.:        FILED SEPTEMBER 10, 2020

Appellant, Truth Shydee Wilson, appeals from the May 22, 2019 judgment of sentence of 30 to 60 years' incarceration, imposed after he was convicted of rape of a child and related offenses.   On appeal, Appellant challenges the admission of certain evidence, as well as a voir dire question asked to prospective jurors.  After careful review, we affirm.

Briefly, Appellant was arrested and charged with various sexual offenses based on his abuse of I.B., the eight-year-old son of his live-in girlfriend.  I.B. reported that Appellant put his penis inside I.B.'s rectum approximately four to six times when I.B. was seven and eight years old.  I.B. did not immediately report the abuse, but did so after his mother and Appellant ended their relationship and Appellant moved out of their home.  There was no physical evidence to confirm I.B.'s allegations of abuse.

Appellant proceeded to a jury trial in February of 2019. At the close thereof, the jury convicted him of rape of a child, 18 Pa.C.S. § 3121(c); unlawful contact with a minor, 18 Pa.C.S. § 6318(a)(1); indecent assault of a complainant less than 13, 18 Pa.C.S. § 3126(a)(7); endangering the welfare of a child, 18 Pa.C.S. § 4304(a)(1); and corruption of a minor, 18 Pa.C.S. § 6301(a)(1)(i). On May 22, 2019, the trial court sentenced Appellant to the aggregate term set forth supra. He filed a timely notice of appeal, and he complied with the court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The trial court filed its Rule 1925(a) opinion on September 19, 2019.

Herein, Appellant states two issues for our review:

I. Did the trial court abuse its discretion in allowing the Commonwealth to play the video of I.B.'s forensic interview, as neither the requirements for the Tender Years Statute nor Pa.R.E. 106 were met?

II. Did the trial court err by permitting the Commonwealth's proposed voir dire question, where the question was not designed to disclose the qualifications of each prospective juror or reveal whether the juror had formed a fixed opinion or may otherwise be subject to disqualification for cause, and it was an incorrect statement of law?

Appellant's Brief at 5 (emphasis and unnecessary capitalization omitted).

Appellant first contends that the trial court erred by admitting a video of a forensic interview conducted of I.B. Preliminarily, we observe:

The standard of review employed when faced with a challenge to the trial court's decision as to whether or not to admit evidence is well settled. Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision absent a clear abuse

- 2 -

of discretion. Commonwealth v. Hunzer, 868 A.2d 498 (Pa. Super. 2005). Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will. Id.

Commonwealth v. Young, 989 A.2d 920, 924 (Pa. Super. 2010) (citation omitted).

In this case, the court concluded that I.B.'s forensic interview was admissible because defense counsel had cross-examined I.B. as follows:

[Defense Counsel:] Good. Now, you said today, to [the Commonwealth during direct-examination], that [Appellant] never, never said he would hurt anyone, right?

[I.B.:] I never remember saying that.

[Defense Counsel:] Okay. Did [Appellant] ever threaten to hurt someone?

[I.B.:] No.

[Defense Counsel:] Okay. So ... do you remember going to an interview where there was a glass wall?

[I.B.:] Yeah.

[Defense Counsel:] And did you tell those people that [Appellant] threatened to hurt you?

[I.B.:] No.

[Defense Counsel:] You don't recall saying that he will hurt your mother if you told someone about it?

[I.B.:] No.

[Defense Counsel:] Because he never said that, right?

[I.B.:] No.

[Defense Counsel:] You told the people at the interview at the time that's not true, right?

[I.B.:] I never said that.

[Defense Counsel:] Okay. Are there other things that you said during that interview that are not true?

[I.B.:] No.

N.T. Trial, 2/25/19-2/26/19, at 90-91.

After I.B.'s testimony, the Commonwealth sought to admit the full recording of I.B.'s forensic interview during the testimony of Detective Don Oesterle, and the following side-bar discussion took place:

> [The Commonwealth]: Very briefly, based on the defense's cross-examination of the victim in this case, it would be my argument that the door has been opened to the forensic interview in this case. I'd just ask for an evidentiary ruling at this time based on my intent to do that.
>
> [Defense Counsel]: I would object to playing the forensic interview. I certainly have reviewed case law. I understand the tender years exception to the hearsay rule. However, I think it is directly contradictory to my client's Sixth Amendment right to confront the witnesses against him. These are out-of-court statements. I will not have an opportunity to cross-examine the statements. So I think basically this is just an improper bolstering of the Commonwealth's case, and it significantly hinders my client's ability to defend himself.
>
> THE COURT: I am going to allow it. You did, in fact, use the statements that he made, specifically didn't you say that the defendant --
>
> [Defense Counsel]: Threatened.
>
> THE COURT: So[,] I'm going to allow it, because then the statements that the child made in the forensic interview will be taken in the context of the interview.

Id. at 113-14.

In its Rule 1925(a) opinion, the trial court elaborated on the basis for its decision to admit I.B.'s forensic interview, explaining:

- 4 -

This [c]ourt admitted the video under Pa.R.E. 106, consistent with the Superior Court of Pennsylvania's ruling in Commonwealth v. Bond, 190 A.3d 664 (Pa. Super. 2018), [stating:]

> Furthermore, we would conclude that the interview was admissible under Pa.R.E. 106:[]
>
> If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time.
>
>> Comment: This rule is identical to F.R.E. 106. A similar principle is expressed in Pa.R.C.P. No. 4020(a)(4), which states: "If only part of a deposition is offered in evidence by a party, any other party may require the offering party to introduce all of it which is relevant to the part introduced, and any party may introduce any other parts."
>>
>> The purpose of Pa.R.E. 106 is to give the adverse party an opportunity to correct a misleading impression that may be created by the use of a part of a writing or recorded statement that may be taken out of context. This rule gives the adverse party the opportunity to correct the misleading impression at the time that the evidence is introduced. The trial court has discretion to decide whether other parts, or other writings or recorded statements, ought in fairness to be considered contemporaneously with the proffered part.
>
> Pa.R.E. 106. Thus, where a party introduces a portion of a writing or recorded statement, Rule 106 permits the adverse party to introduce the remainder so that the fact[-]finder can consider the evidence in context. Commonwealth v. Bryant, 57 A.3d 191, 195 (Pa. Super. 2012); Commonwealth v. Passmore, 857 A.2d 697, 712 (Pa. Super. 2004), appeal denied, … 868 A.2d 1199 ([Pa.] 2005).

[] Bond, 190 A.3d at 673-74....

Counsel for Appellant cross-examined I.B., the victim in this case, regarding statements I.B. made during the forensic interview. ([N.T. Trial, 2/25/19-2/26/19, at 90-91])[.] Pursuant to Pa.R.E.

106, and consistent with Bond, this [c]ourt properly admitted the video to permit the statements made by the victim to be heard in the context of the full interview. Appellant's ... claim of error is without merit.

Trial Court Opinion (TCO), 9/19/19, at 5-6.

On appeal, Appellant disagrees with the trial court's rationale. Preliminarily, he claims that the court improperly relied on Rule 106 for the first time in its opinion, and did not offer this basis for the admission of I.B.'s forensic interview at trial. He also contends that the admission of the forensic interview was error because, unlike in Bond where the child victim was questioned at length about her forensic interview, he only asked I.B. six questions that he claims were about topics unrelated to the specific sexual misconduct allegations. Appellant insists that the cross-examination of I.B. did not create a misleading impression about the allegations, so as to warrant the admission of I.B.'s entire forensic interview. He further avers that, at the very least, only the portion of the video in which I.B. discussed Appellant's threats should have been admitted. Appellant also argues that Rule 106 required the contemporaneous admission of the forensic interview during I.B.'s testimony and, thus, its admission during the testimony of Detective Oesterle was impermissible.

Finally, Appellant maintains that the admission of this evidence was not harmless because it improperly bolstered the Commonwealth's case and added new facts about I.B.'s allegations. Specifically, I.B. stated in the interview that "his body started to cramp, and he was scared, shaking and had goosebumps after [Appellant] put his penis in his buttocks. The video

- 6 -

also contained a detailed description of semen coming out of I.B.'s butt." Appellant's Brief at 25. For these reasons, Appellant contends that the admission of I.B.'s forensic interview was an abuse of the court's discretion.

In response, the Commonwealth insists that, "given that [A]ppellant's counsel attempted to create inconsistencies about I.B.'s trial testimony and statements in the forensic interview, … the trial court correctly decided to introduce the forensic interview so that … the statements that the child made in the forensic interview [could] be taken in the context of the interview[."] Commonwealth's Brief at 10-11 (internal quotation marks and citation omitted). The Commonwealth also avers that,

> although [A]ppellant claims that admission of the forensic interview improperly bolstered the victim's testimony because it included more specific details about I.B.'s physical condition and a description of semen during and after the assaults, the record establishes that the victim testified to [his] physical feelings while being assaulted, as well as to the presence of ejaculate during the assault. As such, the admission of the interview was essentially cumulative.

Id. at 11.

After careful review, we cannot conclude that the trial court committed a clear abuse of discretion in admitting the video of I.B.'s forensic interview. Initially, the court stated at trial that it was admitting I.B.'s interview to provide context for his cross-examination testimony about statements he made to police. This was sufficient to alert defense counsel that Rule 106 was the basis for the court's admitting I.B.'s interview.

Moreover, while Appellant's cross-examination of I.B. regarding the forensic interview was not as lengthy as that in Bond, defense counsel's questions were framed to suggest that I.B.'s trial testimony differed from his interview answers, and that he had made other untrue statements during his conversation with police. Thus, in furtherance of Rule 106's objective of fairness, the court properly allowed the Commonwealth to admit I.B.'s forensic interview to correct any misleading impressions and provide the full context of I.B.'s statements to police.

As for Appellant's assertion that only the portion of the video wherein I.B. discussed threats Appellant made to him should have been played for the jury, as those were the only statements from the interview on which I.B. was cross-examined, this claim is waived. During the sidebar discussion about the admission of the video, defense counsel never objected to the entire video being played, nor asked that the jury hear only a specific portion thereof. See Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). We also reject Appellant's argument that the court should have precluded the interview because the Commonwealth did not seek to admit it during I.B.'s testimony but, instead, waited until Detective Oesterle testified to introduce that evidence. Again, Appellant did not object to the admission of the video on this basis at trial and, thus, he has waived this argument on appeal. In any event, we would conclude that the admission of I.B.'s interview was not so far removed from I.B.'s testimony as to violate Rule 106 's requirement that the evidence should

- 8 -

be admitted contemporaneously. Therefore, we discern no clear abuse of discretion in the trial court's decision to admit I.B.'s forensic interview pursuant to Rule 106.

In any event, even if the court did err in this regard, we would agree with the Commonwealth that the statements Appellant challenges were substantially similar to I.B.'s trial testimony. See Commonwealth v. Story, 383 A.2d 155, 165 (Pa. 1978) ("An error which, viewed by itself, is not minimal, may nonetheless be harmless if properly admitted evidence is substantially similar to the erroneously admitted evidence."). I.B. testified at trial that "[i]t hurt" when Appellant's penis touched his butt, and I.B. felt "[d]isgusted." N.T. Trial at 77. Additionally, I.B. testified that he saw "[w]hite stuff" come out of Appellant's penis. This testimony by I.B. was essentially cumulative of his interview statements that "he was scared, shaking and had goosebumps after [Appellant] put his penis in his buttocks," and I.B.'s description in the interview of seeing Appellant's semen. Appellant's Brief at 25. Accordingly, even if I.B.'s interview should not have been admitted, we would conclude that it was harmless error.[1]

Next, Appellant avers that the trial court erred by allowing the Commonwealth to ask the following question during jury voir dire:

_____

[1] We note that Appellant also argues that the video was not admissible under the Tender Years Act, 42 Pa.C.S. §§ 5981-5988. See Appellant's Brief at 19-20. We need not address this claim, given our conclusion that the court properly admitted the video under Rule 106.

- 9 -

> Under Pennsylvania law, the testimony of the alleged victim standing alone, if believed by you, is sufficient proof upon which to find the defendant guilty in a sexual assault case. Thus, you may find the defendant guilty if the testimony of the alleged victim convinces you beyond a reasonable doubt that the defendant is guilty. Would you be able to follow this principle of law?

Appellant's Brief at 27 (citation to the record omitted). Appellant claims this question was asked by the Commonwealth for the improper purpose of determining what the prospective jurors' attitudes would be when "asked to pass upon the guilt of [Appellant] after having been presented with nothing more than I.B.'s uncorroborated allegations." Appellant's Brief at 35. Citing Commonwealth v. Perea, 381 A.2d 494 (Pa. Super. 1977), Commonwealth v. Hoffman, 398 A.2d 658 (Pa. Super. 1979), Commonwealth v. Bright, 420 A.2d 714, 717 (Pa. Super. 1980), and Commonwealth v. Ritter, 615 A.2d 442 (Pa. Super. 1992), Appellant insists that the question was improper because it "was in the nature of a jury instruction" and it inquired "into each prospective juror's understanding and opinion of specific principles of law and their ability to accept and act upon them…." Appellant's Brief at 32-33. Finally, he contends that the question was an incorrect statement of the law, as it did not direct that I.B.'s testimony must be believed beyond a reasonable doubt, and be sufficient to establish each element of the crimes with which Appellant was charged. Id. at 42. For these reasons, Appellant concludes that the question was wholly inappropriate, and prejudicial to the extent that he was denied his right to an impartial jury, a fair trial, and due process of law.

As the trial court observes, this Court rejected a similar challenge to a virtually identical voir dire question in Commonwealth v. Antill, No. 194 WDA 2018, unpublished at *1–3 (Pa. Super. filed July 9, 2019).[2] There, we explained:

> The scope of voir dire examination is a matter within the discretion of the trial court, and that court's ruling will not be reversed absent an abuse of discretion. Commonwealth v. Richardson, 473 A.2d 1361, 1363 (Pa. 1984). A trial court's rulings concerning the scope of voir dire must be considered in light of the factual circumstances of a particular criminal episode. Id.
>
> "It is well settled that the sole purpose of examination of jurors under voir dire is to secure a competent, fair, impartial and unprejudiced jury." Commonwealth v. Ellison, 902 A.2d 419, 423 (Pa. 2006). "It is only when the court permits the [jury] selection process to impugn the fundamental qualities of competence, fairness, and impartiality that we may conclude that a palpable abuse of discretion has been committed." Commonwealth v. Noel, 104 A.3d 1156, 1171 (Pa. 2014) (internal quotation marks and citations omitted). However, "[v]oir dire is not to be utilized as a tool for the attorneys to ascertain the effectiveness of potential trial strategies." Commonwealth v. Paolello, 665 A.2d 439, 451 (Pa. 1995).
>
> Antill argues that "questions which are in the nature of jury instructions are wholly inappropriate for voir dire examination." In support of this proposition, Antill cites to … Bright…. Upon reviewing Bright, we conclude Antill's argument stretches the language of that opinion beyond the breaking point.
>
> In Bright,[2] the defendant sought to ask prospective jurors regarding their ability to dissent from the views of the majority of

_____

[2] Pennsylvania Rule of Appellate Procedure 126(b) provides that non-precedential decisions (referring to unpublished, memorandum decisions of the Superior Court) filed after May 1, 2019, may be cited for their persuasive value.

their fellow jurors. See [Bright, 420 A.2d at 717]. The trial court refused the defendant's request. See id. Importantly, this Court held that "the question was in the nature of a jury instruction and that, since the court gave proper instructions, no error occurred from the refusal to allow the question." Id. After examining the trial court's instructions to the jury, the Bright panel concluded "the [trial] court's opening remarks and closing instructions … clearly demonstrate the trial court adequately and correctly instructed the jury." Id.

> [2] Antill also cites to … Perea, … Hoffman, … and … Ritter…. Each of these precedents are similar to Bright, as in each case this Court reviewed a trial court ruling denying a requested jury instruction. See Perea, [381 A.2d] at 496; Hoffman, [398 A.2d] at 660; Ritter, [615 A.2d] at 446-447. None of them created the bright line rule sought by Antill here.

As a result, the Bright Court did not affirmatively hold that the proposed instruction should be excluded due to its similarity to a jury instruction. Instead, the Court merely found that the trial court did not err in excluding the question since the trial court properly instructed the jury on the relevant points of law.

Here, Antill is attempting to turn Bright into a bright-line rule that would effectively eviscerate our standard of review. We decline to accept Antill's invitation to create a new standard for voir dire proceedings.

Turning to the circumstances at hand, the Commonwealth's case was based almost entirely on the victim's testimony. Pursuant to this state of affairs, we cannot conclude the court abused its discretion when it permitted a question designed to expose any fixed opinions of the jurors regarding the lack of physical or corroborating evidence. As such, the question was used to "secure a competent, fair, impartial and unprejudiced jury" and was not used to ascertain the effectiveness of a potential trial strategy. See Ellison, 902 A.2d at 423-424.

Antill also argues that the language used in the question does not conform to the law. Specifically, he contends the question omits any reference to the Commonwealth's burden of beyond a reasonable doubt. We agree that the question, as written, does not accurately state the law. However, this conclusion does not automatically render the trial court's decision to allow the question an abuse of discretion. The issue at hand is whether the question

impaired the competence, fairness or impartiality of the jury. See Noel, 104 A.3d at 1171.

In its opening statement, the Commonwealth informed the jury that it was "solely on the Commonwealth to prove to you beyond a reasonable doubt that the defendant is guilty." More importantly, the trial court properly instructed the jury that Antill was presumed innocent until the Commonwealth established, beyond a reasonable doubt, every element of every crime charged. Further, when the jury requested a clarification on the instruction, the court informed them "you may find the defendant guilty if the testimony of [the victim] convinces you beyond a reasonable doubt that the defendant is guilty."

As a result, we cannot conclude that the question deprived Antill of a competent, fair, and impartial jury.

Antill, No. 194 WDA 2018, unpublished memorandum at *1-3 (some citations omitted).

The facts of the present case, the at-issue voir dire question, and the arguments presented by Appellant mirror those in Antill.[3] We find the Antill panel's rationale for determining that the voir dire question was not improper to be persuasive and convincing. Therefore, for the reasons set forth in Antill, we similarly conclude that Appellant's arguments are meritless, and that the Commonwealth's voir dire question did not deprive Appellant of a fair and impartial jury.

Judgment of sentence affirmed.

_____

[3] We also observe that, here, as in Antill, the trial court instructed the jury that Appellant was "presumed to be innocent unless and until [the jury] conclude[s], based on a careful and impartial consideration of the evidence, that the Commonwealth has prove[n Appellant] guilty beyond a reasonable doubt." N.T. Trial at 161. It also instructed that "it is the Commonwealth that always has the burden of proving each and every element of the crimes charged beyond a reasonable doubt." Id. at 161-62.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/10/2020